The following constitutes
the order of the court. Signed August 3, 2015

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Thomas Richard Summers,<br>Erin Rene Summers,<br><br>        Debtors. | No. 14-42308<br><br>Chapter 13 |

**MEMORANDUM AFTER JULY 29, 2015 HEARING**

On July 21, 2015, Debtors filed a *Motion to Amend Order Approving Second Amended Stipulation for Sale of Real Property and Release of Claims* (Doc. 119) (the "Motion"). Sperry Associates Federal Credit Union (hereinafter "Sperry" or "Secured Creditor") filed an opposition to the *Motion*, but agreed to have the *Motion* heard on shortened time. A hearing was held on July 29, 2015, and the appearances at the hearing

1

were noted on the record. At the conclusion of the hearing the court denied the *Motion*. The court issues this Memorandum to clarify the reasons for the court's decision.

As background, the Debtors filed this Chapter 13 case on May 28, 2014, and listed on Schedule A real property located at 331 Edythe Street, Livermore, CA 94550 (hereinafter "Real Property"). Title to the property is held in the name of Debtor Thomas Summers as sole Trustee of The Dolores R. Summers Revocable Trust.[1] Sperry holds a note secured by a first priority deed of trust encumbering the Real Property, and filed a motion for relief from stay in August 2014 which was granted after hearing in September. The Debtors' Third Amended Chapter 13 Plan was confirmed on February 17, 2015, and provided that the real property would be surrendered. That apparently quiescent resolution notwithstanding, on March 11, 2015, Debtor Thomas Summers, as Trustee of the Trust, filed a complaint in state court against the Secured Creditor (the "State Court

---

[1] Mr. Summers, without the assistance of counsel, also purported to file a chapter 11 bankruptcy petition for the Trust, but that case was dismissed for a number of reasons, including, most prominently, the ineligibility of the trust debtor for relief under Title 11. As part of the discussions that led to the Second Amended Stipulation, the Trust, acting through the debtor herein Richard Summers, agreed to be barred from filing bankruptcy for one year. *See In re The Dolores R. Summers Revocable Trust*, Bankr. No. 15-40928, ECF No. 15, 32 (Bankr. N.D. Cal. May 7, 2015).

2

Case: 14-42308    Doc# 130    Filed: 08/03/15    Entered: 08/04/15 10:32:31    Page 2 of 10

Action") alleging, among other things, that Sperry did not hold a valid security interest in the Real Property.  Sperry denied these allegations.

On May 21, 2015, the parties entered into a stipulation (the "*Initial Stipulation*") intended to resolve all disputes between the parties concerning the disposition of the Real Property, including the claims asserted in the State Court Action, via an agreement to delay the non-judicial foreclosure of the Real Property which had been initiated by Sperry, in favor of a brief opportunity to see whether the Real Property could be sold in a consensual (i.e., non-foreclosure) sale.  A proposed order approving the *Initial Stipulation* was submitted to the court, without any prior hearings thereon or even discussions of the *Initial Stipulation* before the court.

As the court indicated during a Status Conference it set on the *Initial Stipulation* on June 4, 2015, the court was unwilling to approve the *Initial Stipulation* because it included provisions for the appointment of a special master to market the Real Property, without any consideration whether the court had authority to appoint such a special master, as well as specific directions for the special master, without any

3

factual or legal basis for the court to take such action. After a further Status Conference on June 14, ultimately a *Second Amended Stipulation* was signed by Counsel for Sperry, the Debtors, Counsel for the Debtors, and the Chapter 13 Standing Trustee (the "*Final Stipulation*"). The *Final Stipulation* was approved by the court on June 29, 2015.

In general terms, the *Final Stipulation*: provided that the Real Property would be marketed consistent with practices for residential properties (Final Stipulation at 3:18-21), and provided for the appointment of a broker and a title company to complete the sale (*Id.* at 3:18-19, 27-28); provided that Secured Creditor would delay any foreclosure sale on the Real Property until at least August 7, 2015, to allow for a consensual sale of the Real Property to be closed through an escrow for which draft instructions were included, signed off by the Debtors and the Secured Creditor (*Id.* at 8:2-20); provided for an agreed-upon pay-off amount for Secured Creditor, and a waiver by Debtors of any objection to or defense against Secured Creditor's secured claim, and a release of Secured Creditor (*Id.* at 4-7); provided for an agreed priority for the disposition of funds should there be a

4

consensual sale (*Id.* at 4); and provided that Debtors would dismiss their State Court Action and withdraw their proposed Fourth Amended Chapter 13 Plan (which had not been confirmed, but which had purported to permit Debtors until mid-August to sell the Real Property) (*Id.* at 3:16-17, 4:4-5).

Neither the *Final Stipulation*, nor the draft Escrow Instructions attached thereto, provided any agreed "minimum price" for the Real Property—not surprising, given that the court had granted relief from stay as to the Real Property ten months earlier, and, as the court pointed out at the hearing on the *Motion*, there was no basis even to argue that the *Final Stipulation* was governed by, or subject to, the requirements for sale of estate property under Section 363 of the Bankruptcy Code. Moreover, there was no discussion before the court of a minimum sale price for the Real Property; the Debtors did express the hope that the Real Property might garner a price in excess of the liens against the Real Property, as Debtors often do, but that hope did not become a condition to the sale.

Nor did the *Final Stipulation* or the Escrow Instructions contain any particular requirement with respect to the form of the documents to be submitted by Secured Creditor to close the

5

escrow of a consensual sale.  And there is no reason to suggest that any such requirement should have been implied—surely, there would be no such particular requirement in the ordinary case, and Debtors' insistence on any particular requirement in this case would have been inconsistent with the agreement to dismiss the State Court Action challenging Sperry's secured claim, and flatly *contra* the releases and waivers contained in the *Final Stipulation*.

These facts notwithstanding, the Debtors filed the *Motion* which requested the Court amend the *Order Approving the Second Amended Stipulation (the "Order")*, specifically to add language to the *Order* which would require the appointment of a new real estate broker, based on the Debtors' complaint that the agreed-upon broker proposes to list the Real Property at too low a price, and to change the title company for a consensual sale based on the Debtor's complaint that the agreed-upon title company was not requiring sufficient documents from Secured Creditor at close of escrow.

The Debtors' requests cannot be granted for several reasons.  First, as demonstrated above and as argued by Sperry at the July 29 hearing, to the extent that Debtors seek

6

unilaterally to impose additional or different terms in a stipulation, their requests are inappropriate: they agreed to the broker and the escrow company in the *Final Stipulation*, without any pre-conditions or arrangements concerning the performance of their duties, and they cannot simply dictate now that they are entitled to modify the *Order*, in a manner to which the counterparty does not agree, based upon their apparent disappointment with the likely outcome of a sale process.

Second, the provisions of the *Order* that Debtors wish to amend would not merely unilaterally impose new terms on a non-consenting party to a stipulation, they would necessarily subvert the letter and the spirit of the arrangement agreed to: that Debtors would have a very limited period of time to sell the Real Property in a consensual sale, and avoid any undesirable aspects of a foreclosure. The court is frankly concerned that the Debtors' unstated but primary goal with the *Motion* is to ask for fundamental changes to the sale process in an effort to support an argument that they are entitled to an extension of the time for that process to be completed. Under the circumstances that preceded the parties' entry into

7

the *Final Stipulation*, that would be an entirely unacceptable and inequitable result.

Third, it would be particularly inappropriate and inequitable for the court to modify the *Order* or the *Final Stipulation*. Courts, in general, have little if any power unilaterally to change the "deal" to which the parties had agreed via a stipulation. In this instance, it would be particularly inappropriate for the court to "rewrite" the parties' deal, because the form and contents of the *Final Stipulation* represent not only the parties' desire to bring an end to months of disputes and litigation, but an acknowledgement of the court's reluctance to insert itself too minutely into an arrangement that had been agreed to by the parties but with which the court had had no prior involvement.

As the court stated, pointedly, in declining to approve the *Initial Stipulation*, the court was uncomfortable with a form of stipulation and order that would have directed both the parties and to-be-appointed court officers to take detailed steps in connection with a sale process. And it was precisely that unease by the court in approving an order that was not only *not* the product of any adjudicative process by this court,

8

but had not even been discussed before the court, that led to the relatively simple and unconditional form of *Order* that Debtors now ask this court to modify.  Accordingly, the court is convinced that it would be particularly improper under these circumstances to insert itself into the parties' consensual arrangement, at the request of only one of the parties.

The court does not doubt for a moment the emotional power and burden of the issues confronted by Debtors in these matters.  But the Debtors chose to bring an end to their disputes with Sperry via the form of *Final Stipulation*, and that outcome cannot readily be undone or modified. In the end, the parties agreed not to a particular outcome to a sales process through the *Final Stipulation*—rather they agreed to repose.  And that is the only thing that the court should now enforce.

For all of the above-stated reasons, the court declines to approve the *Motion*.

**\*END OF MEMORANDUM\***

9

## COURT SERVICE LIST

Thomas Richard Summers
Erin Rene Summers
649 Jade Place
Livermore, CA 94550

Kristy A. Hernandez
Hernandez Law Offices, Inc.
37600 Central Court #201
Newark, CA 94560

John C. Summers
Meissner, Joseph, and Palley
c/o Sandra L. Sava, Esq.
1555 River Park Dr., #108
Sacramento, CA 95815

Sandra L. Sava
Johnson, Fort, Meissner, Joseph & Palley
1555 River Park Dr, #108
Sacramento, CA 95815

Martha G. Bronitsky
P.O. Box 9077
Pleasanton, CA 94566

Ivo Keller
BUCHALTER NEMER
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA

U.S. Trustee
Office of the U.S. Trustee/Oak
Office of the U.S. Trustee
1301 Clay St. #690N
Oakland, CA 94612